**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ALFRED SANTIAGO, on behalf of himself**
**and all other similarly situated employees,**

        **Plaintiff,**

**-vs-**                                                **Case No.  6:07-cv-57-Orl-28GJK**

**WALPOLE, INC., EDWIN E. WALPOLE, III,**

        **Defendants.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **RENEWED JOINT MOTION FOR APPROVAL OF JOINT STIPULATION AND SETTLEMENT AGREEMENT (Doc. No. 57)** |
| **FILED:** | **July 8, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

**I.**    **BACKGROUND**

     **A.**    **Posture of the Case**

On January 23, 2007, Plaintiff Alfred Santiago ("Santiago"), on behalf of himself and all other similarly situated employees, filed an amended complaint ("Complaint") against Defendants Walpole, Inc. and Edwin E. Walpole, III (herein, the "Defendant(s)") for unpaid

overtime and unpaid wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"). Doc. No. 4. On March 1, 2007, Mark Pettis, Frank Rodriguez, Manuel Villega, Luis Acosta, Eduardo Osario, Carlos Ostolaza and Victor Rodriguez were added as opt-in plaintiffs. *See* Doc. Nos. 8-15.[1] On May 25, 2007, Juan A. Baltazar, Margarito Virto, Jorge Romero and Arturo Baltazar were added as additional opt-in plaintiffs. Doc. No. 38. Santiago and all opt-in plaintiffs will be collectively referred to as the "Plaintiffs".

On August 1, 2007, Plaintiff Santiago filed a motion for an order permitting court supervised notice to employees of their opt-in rights. Doc. No. 45. However, the motion was denied without prejudice after the Court was informed that the parties had entered into settlement discussions which could potentially moot the motion. Doc. Nos. 48, 49. On February 1, 2008, the parties sought in camera review and approval of their confidential settlement. Doc. No. 50. The motion was denied without prejudice because no good cause was shown as to why an in camera review was necessary. Doc. No. 51.

Subsequently, the parties filed a Joint Motion for Reconsideration of Joint Stipulation and Settlement Agreement (Doc. No. 52), which was also denied (Doc. No. 53). In that motion, the parties represented that they had completely settled the case by virtue of an executed Joint Stipulation and Settlement Agreement, and sought permission to send notice of the same to potential opt-in plaintiffs. The Court summarized as follows:

> In the present case, the parties are presenting a settlement agreement for this Court's approval which provides a formula for determining *potential* plaintiffs' damages. At this point, notice has not been provided to the potential plaintiffs other than those that have already been added to the case. It appears to seek *preliminary* approval of settlement terms for currently unasserted claims of as yet

---

[1] It is noted for purposes of the proposed Settlement Agreement, K.E. Pantas and the Pantas Law Firm, P.A., filed a Notice of Attorney's Charging Lien for reasonable compensation of services rendered prior to his withdrawal. Doc. No. 31.

2

> known future opt-in Plaintiffs. Therefore, the Court is not fully aware who the parties to the settlement agreement are at this juncture. As the Court cannot approve a hypothetical settlement on behalf of absent, unrepresented potential plaintiffs, the Motion is **DENIED** without prejudice.

Doc. No. 53 at 5 (emphasis in original). On June 4, 2008, the parties requested a hearing on this Court's Order which was held on July 7, 2008. Doc. Nos. 54, 55, 56. At the hearing, Plaintiffs' counsel argued that they sought approval of the Settlement Agreement as to potential opt-ins by using a somewhat new method -- "the trend du jour of the Eleventh Circuit" -- employing the common fund doctrine in the FLSA context.[2] Counsel mentioned *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Stahl v. Mastec, Inc.*, Case No. 8:05-cv-1265-T-27TGW; and *Lepinske v. Mercedes Homes, Inc., Howard Buescher and Keith Buescher*, Case No. 6:07-cv-915-Orl-31DAB. *Camden* is not an FLSA case. In *Stahl*, the Court granted preliminary approval of the settlement agreement and the Order contains "opt-out" language, which is a fundamentally different context.

The undersigned directed the parties to file a renewed motion and to include authority supporting their arguments that the Court should approve the Settlement Agreement and that employing a common doctrine is proper in the context of an FLSA action. On July 8, 2008, the filed a Renewed Joint Motion (the "Motion") for Approval of Joint Stipulation and Settlement Agreement (the "Stipulation"). Doc. Nos. 57, 58. The Motion seeks approval of the Stipulation. Doc. No. 57 at 3. The Motion does not contain any legal citations and the Stipulation only cites to *Camden* with no legal interpretation. See Doc. No. 58 at 2. Both *Camden* and *Stahl* are factually and legally distinguishable from the present case.

---

[2] The common fund doctrine traditionally applies when a common fund is created for the class and the attorneys recover their fees as a percentage of the total common fund. *Camden*, 946 F.2d at 771.

### B. The Stipulation

The Stipulation states the following:

> This Stipulation and the settlement it evidences is made in compromise of disputed claims. Because this action was pled as an FLSA collective action, this settlement must receive approval by the Court. Accordingly, the parties enter into this Stipulation and associated settlement on a <u>conditional</u> basis.

Doc. No. 58 (emphasis added). The Stipulation states it is "is a common fund settlement" which "is consistent with that permitted by the Eleventh Circuit." *Id.* at 2 (citing *Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). The Stipulation further states:

> Under the terms of this common fund settlement, each putative class member (there are a total of approximately 206 persons in the putative class) will receive a Settlement Notice . . . which states that for every month they worked for Defendant, they will receive compensation for their average overtime hours worked. The total common fund settlement is $675,000.00[.] From that, Plaintiff's counsel's agreed upon attorneys' fees and costs are deducted in the amount of $235,000.00, as is the $20,000.00 settlement payment to the named Plaintiff, Alfred Santiago, and the $15,000.00 administrative costs to facilitate and finalize notice. Payment of attorneys' fees and costs from the total common fund is allowed by the United States Supreme Court. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) . . . Thus, there is a remaining amount of $405,000.00 for putative class members to obtain compensation.

*Id.* The Stipulation also states: "It is important to note that because this is an FLSA opt-in collective action, <u>class members who elect not to join this lawsuit will not be bound by this settlement</u> and may proceed individually on their claims if they wish." *Id.* (emphasis added). The funds not distributed will revert back to Defendants. Doc. No. 58 at 2-3. The Stipulation provides the following formula used to calculate each plaintiff's disbursement:

- Average weekly compensation per class member of $600.00;

- Average overtime hours per week was 5;

- Half time calculated rate per overtime hour was $6.67 for a total weekly overtime compensation owed of $33.33;

- 150 total weeks in the class period;

- $33.33 X 150 weeks would total a full recovery per class member of $5,000.00.

- 206 class members X $5,000 = $1,030,000.00;

- The parties negotiated a 35% discount of the total settlement and waived liquidated damages based upon the defenses asserted by the Defendant for a total settlement amount of $675,000.00 (rounded);

- Of the $405,000.00 remaining after expenses and fees and costs were deducted, each class member would be owed a total of $1,966.02 for the entire class period or the monthly equivalent of $54.61.

*Id.* at 3. The Stipulation states: "The Settling Parties stipulate, for settlement purposes only, to the certification by the Court of a collective action as to all claims asserted in the Litigation." *Id.* at 9. The Stipulation then provides the following:

> Walpole, according to the terms, conditions and procedures set forth in Section VI of this Stipulation, shall pay each Participating Claimant according to the following formula. The payments shall be allocated for reporting reasons as set forth below: (a) fifty percent shall be deemed payment in settlement of claims for unpaid wages; and (b) fifty percent shall be deemed payment in settlement for claims of liquidated damages, penalties, costs, interest and all other non-wage recovery.

Doc. No. 58 at 9.

Under the title "Court Approval of Notice to the Class and Settlement", the Stipulation states: "The Plaintiffs and Walpole, through their counsel of record in the Litigation, shall file this Stipulation with the Court and jointly move for approval of this Stipulation. Via this submission, and a supporting motion, the Settling Parties, through their counsel of record, request that the Court enter the Approval Order with regard to the settlement, granting <u>final</u> approval of the settlement, granting <u>final</u> approval of this Stipulation and entering Judgment." *Id.*

at 11-12 (emphasis added). The Stipulation then provides: "Plaintiffs and Class Counsel understand that the Court has a duty to determine the reasonableness of the attorneys fees award and that they shall be responsible for justifying the amount of this cost and fee payment to the Court, and they shall submit the necessary materials to justify this payment along with the Settling Parties' joint motion for final approval of the Stipulation." *Id.* at 16 (emphasis added).

The Stipulation provides that the Claims Administrator [Walpole] will receive an estimated $15,000.00 for cost of services and expenses incurred. *Id.* at 18.[3] It states: "Notwithstanding any other provision of this Stipulation, no order of the Court reducing, or modification or reversal on appeal of any order of the Court reducing the amount of any attorney fees or costs to be paid by Walpole to Class Counsel, shall constitute grounds for cancellation or termination of the Stipulation or grounds for limiting any other provision of the Judgment." Doc. No. 58 at 19. Finally, the Stipulation provides that this Court "shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation." *Id.* at 21.

    **C.**    **The Notice**

Attached to the Joint Stipulation is the Class Notice of Settlement ("Notice"). Doc. No. 58 at 24. The Notice states: "Because your rights will be affected by this Settlement, it is extremely important that you read this Notice carefully." *Id.* (emphasis added). The Notice also provides: "Walpole will pay a maximum settlement amount to pay: (a) the valid and timely

---

[3] The Stipulation states that "all pending attorney's fee liens filed by K.E. Pantas . . . shall be satisfied by the payment of 25% of the attorney's fees awarded and paid in this matter." *Id.* It also provides that Santiago will receive a payment of $20,000.00 as "compensation and consideration for both (i) his effort as Plaintiff and/or representative in the Litigation; and (ii) his individual payment as a Participating Claimant." *Id.* at 17.

claims of the Class; (b) Class Counsel's attorney's fees and litigation costs; (c) amounts payable to the Plaintiff; and (d) the costs of administering the Settlement. *Id.* at 25. It states that the estimated distributions range from $50.00 to $2,000.00. *Id.* The Notice does not explain how or why the prospective plaintiff's rights will be affected, nor does it provide the formula upon which the distributions would be based.

## II. LAW

### A. Eleventh Circuit Traditional Collective Action Approach

An FLSA action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (emphasis added). In order to maintain a collective action under Section 216(b), the named plaintiff must establish that the potential plaintiffs are "similarly situated" employees. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001); *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1567 - 68 (11th Cir. 1991). This burden is less stringent than that for joinder or for certification of a class action under Federal Rules of Civil Procedure 20(a) or 23, respectively.[4] *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

The United States Court of Appeals for the Eleventh Circuit has "suggest[ed]" that

---

[4] The Eleventh Circuit has delineated several reasons why the "similarly situated" requirement under Section 216(b) is considerably less stringent than the class action requirements under Federal Rule of Civil Procedure 23. *See, e.g., Cameron-Grant v. Maxim Healthcare Serv., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003). First, under Section 216(b), even if a plaintiff can demonstrate that the potential plaintiffs are "similarly situated" employees, the plaintiff has no independent right to represent such individuals. *See Id.* at 1249. Instead, the potential plaintiffs must file with the district court written consent to become a party plaintiff. 29 U.S.C. § 216(b). Thus, unlike most Rule 23 class actions, a Section 216(b) action does not become a collective action unless another plaintiff affirmatively chooses to opt into the class. *See Cameron-Grant*, 347 F.3d at 1249. "[I]n contrast to Rule 23 class actions, the existence of a collective action under Section 216(b) does depend on the active participation of other plaintiffs." *Id.* The difference between Rule 23 class actions and Section 216(b) collective actions is therefore a "fundamental, irreconcilable difference[.]" *Id.*

7

district courts use a "two-tiered approach to certification of [Section] 216(b) opt-in classes." *Hipp*, 252 F.3d at 1218-19 (11th Cir. 2001). Under this approach, the first tier is the "notice stage," in which the district court determines whether to grant "conditional certification" of a representative collective action under the FLSA. *Id.* at 1218. The Eleventh Circuit noted:

> At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential [plaintiffs]. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.

*Hipp*, 252 F.3d at 1218. When the district court grants conditional certification, potential plaintiffs receive notice and the opportunity to "opt-in." Under the Eleventh Circuit's recommended approach, the case then proceeds as a collective action through the close of discovery. *Id.* After the completion of discovery, the defendant may initiate the "second tier" by filing a motion for "decertification." *Id.* At this second stage, the district court makes a factual determination as to whether the claimants are "similarly situated." *Id.* If the claimants are not similarly situated, the district court "decertifies" the group; the opt-in plaintiffs are then dismissed without prejudice; and the original "representative" plaintiff continues to trial (or otherwise) on his or her original claim. *Id.*

The Eleventh Circuit has indicated the two-tiered approach is an "effective tool for district courts to use in managing these often complex cases, and [suggested] that district courts in this circuit adopt it in future cases." *Id.* at 1219. The Eleventh Circuit notes, however, that "[n]othing in [the Eleventh Circuit] precedent . . . requires district courts to utilize this approach." *Id.* Indeed, the decision to create an opt-in collective action under Section 216(b) remains "soundly within the discretion of the district court." *Id.*

8

### B.     The Effect of Approving the Settlement

It is axiomatic that "[s]ettlement of a plaintiff's claims moots an action." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3rd Cir. 1992) (*citing Lake Coal Co. v. Roberts & Schaefer Co.*, 474 U.S. 120, 106 S.Ct. 553, 88 L.Ed.2d 418 (1985)); *Hammond Clock Co. v. Schiff*, 293 U.S. 529, 55 S.Ct. 146, 79 L.Ed. 639 (1934); and 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 3533.2, at 233 (1984).  This is no less true in the context of an FLSA case, as this Court has noted.  *See Holcomb v. Mortgage House, Inc.,* 2007 WL 129008 (M.D. Fla. 2007); *see also Maranon v. Appliance Direct, Inc.,* 2008 WL 151891 (M.D. Fla. 2008).  As stated in *Holcomb*:

> Article III of the United States Constitution requires that a "plaintiff ... make out a 'case and controversy' between himself and the defendant; that is, the plaintiff must allege 'a distinct and palpable injury to himself' such as to warrant his invocation of federal-court jurisdiction." *National Wildlife Fed. v. Dep't of Interior,* 616 F.Supp. 889, 889 (D.D.C.1984); *see Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir.2001) ("Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of cases and controversies.").
>
> If there is no live controversy, the Court must dismiss Plaintiff's overtime claim as moot. *See National Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir.2005) ("By its very nature, a moot suit cannot present an Article III case and controversy and the federal courts lack subject matter jurisdiction to entertain it."), *cert. denied*, 126 S.Ct. 1318 (2006); *Al Najjar*, 273 F.3d at 1335 ("If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed.").

*Holcomb*, 2007 WL at *2.  "More specifically, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1245 (11th Cir. 2003) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003)) (internal quotations omitted).

### C.     Attorney's Fees and the Common Fund Doctrine

According to the axiomatic American Rule, all parties are to bear their own costs in litigation. *See, e.g.*, *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.C. 1612, 44 LED.2d 141 (1975). Under the FLSA, a plaintiff has the right to shift fees to the Defendant. In this case, however, Plaintiffs chose to spread the costs amongst all claimants pursuant to the common fund doctrine. Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval. *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). The Defendant would not pay attorneys fees into the fund, but rather, the fees would be borne by the participants in the settlement because their counsel would receive a percentage of the total available fund. The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.C. 745, 749, 62 LED.2d 676 (1980). "The criteria for application of the doctrine are satisfied when . . . each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* The exception can apply even where the parties agree that any unclaimed portion of the common fund will revert to the party that established it. *See Camden*, 946 F.2d at 771, n.2.

In collective FLSA actions, the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination. *See*, *e.g.*, *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849-50 (5th Cir.1998). Within this circuit, the district court has great latitude in formulating attorney's fee awards, subject only to the necessity of

explaining its reasoning so the appellate court can undertake proper review. *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999).

**III.    ANALYSIS**

In the present case, the parties have chosen to proceed with this FLSA collective action contrary to Eleventh Circuit tradition. Essentially, the parties are asking the Court to effectuate and/or endorse a mechanism to provide notice to all potential opt-in plaintiffs. To that end, this Court would be agreeable to such method.[5] However, the Stipulation and Notice are problematic in a number of ways.

**A.    The Stipulation**

The Motion and Stipulation are not clear as to whether the parties are seeking preliminary or final relief. The Motion states: "Plaintiff and Defendants move for approval of the Joint Stipulation and Settlement Agreement." Doc. No. 57 at 3. On the first page, the Stipulation indicates that Court approval would be on a "conditional basis." Doc. No. 58. Thereafter, the Stipulation indicates that the parties are seeking final approval. *Id.* at 11-12, 16.[6] Thus, the Stipulation, on its face, is ambiguous. Moreover, if the settlement agreement is given <u>final</u> approval, it disposes of the Plaintiffs claims against Defendant and the case must be dismissed as moot.

---

[5] To the extent the parties are requesting actions beyond facilitating notice to potential plaintiffs, as discussed below, the Court would not be inclined to grant such relief.

[6] "The Plaintiffs and Walpole, through their counsel of record in the Litigation, shall file this Stipulation with the Court and jointly move for approval of this Stipulation. Via this submission, and a supporting motion, the Settling Parties, through their counsel of record, request that the Court enter the Approval Order with regard to the settlement, granting <u>final</u> approval of the settlement, granting <u>final</u> approval of this Stipulation and entering Judgment." The Stipulation then provides: "Plaintiffs and Class Counsel understand that the Court has a duty to determine the reasonableness of the attorneys fees award and that they shall be responsible for justifying the amount of this cost and fee payment to the Court, and <u>they shall submit the necessary materials to justify this payment along with the Settling Parties' joint motion for final approval of the Stipulation</u>." *Id.* at 11-12, 16 (emphasis added).

This Court would be inclined to grant <u>preliminary</u> approval of the settlement, thereby not fully adjudicating the rights of the Plaintiffs.[7]  Approving the settlement on a conditional basis, thus not granting final approval, does not eliminate the live controversy of the case as the Plaintiffs' rights and relief are still in question. *See Cameron-Grant*, 347 at 1245; *Powell*, 395 U.S. at 496; *31 Foster Children*, 329 F.3d at 1263.  Nonetheless, as discussed below, granting such relief still raises a concern for the Court.

### B. The Notice

The Notice is deficient in a number of ways.  First, the Notice indicates that the potential plaintiffs' rights <u>will be affected</u> by the Stipulation. Doc. No. 58 at 24 (emphasis added). However, the Stipulation states:  "It is important to note that because this is an FLSA opt-in collective action, <u>class members who elect not to join this lawsuit will not be bound by this settlement</u> and may proceed individually on their claims if they wish." *Id.* at 2.  Thus, the Stipulation and the Notice are inconsistent with one another. As to the language set forth in the Notice, it does not explain how or why the prospective plaintiffs' rights will be affected.  Indeed, if the Court approved the Stipulation, the rights of the class members receiving notice will *not* be affected *unless* they exercise their right to opt-in.  Thus, the language in the Notice about the effect the Stipulation <u>may</u> have on their rights requires clarification.

Second, the Notice does not provide the formula upon which the distributions to the Plaintiffs and potential plaintiffs are based.  This information should be provided in the Notice so each potential plaintiff can make an informed determination about whether or not the Stipulation is reasonable to them.

---

[7] *See, e.g. James Stahl, et al v. Mastec, Inc. and Mastec North America, Inc. d/b/a Advanced Technologies*, Case No. 8:05-cv-1265-27-TGW.

Third, the Notice should fully inform the class members of the total common fund settlement, including the agreed upon attorneys' fees and costs, the administrative costs and the proposed settlement payment to Santiago. *See Davis c. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d 1272, 1275 (M.D. Ala. 2004) (*citing Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)) (addresses the importance of preventing misleading communications and misuse of notice).

## C. Attorney's Fees and the Common Fund Doctrine

The Court is uncertain that the common fund doctrine is an appropriate method for determining attorney's fees in this case. FLSA collective action proceedings are inherently different from Rule 23 class action proceedings in that the potential plaintiffs have the option to opt-in as opposed to the traditional opt-out right in an action under Fed. R. Civ. P. 23. *See* n. 4. At this juncture, Plaintiffs have no authority to represent potential opt-in plaintiffs. Because Plaintiffs have no authority to represent absent potential opt-ins and those individuals can only participate in this action by opting into the case, as well as the fact that the Court can not determine the fairness of any proposed settlement for such individuals unless they appear in this case, employing a common fund methodology for awarding attorneys' fees in this context may prove problematic. Nevertheless, it appears that the Stipulation would allow the Court discretion to determine the correct methodology to be used deciding the amount of fees to be awarded. *See above* at p. 5 and n. 6.[8]

Finally, if the Court were to determine that the attorney's fees were unreasonable and they were reduced, it appears the excess funds would revert to the Defendant. However, the

---

[8] If the parties believe that the Court would be bound by the statement in the Stipulation: "This is a common fund settlement", they should address that a potential renewal motion.

Stipulation and Notice do not make this clear. Furthermore, the potential claimants may wish to be heard as to whether reverting the excess funds is fair and reasonable. Thus, the proposed Notice appears to be inadequate and unclear. The Court can not determine whether a common fund settlement is appropriate and granting final approval would moot this case.

## IV.     CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the motion be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 17, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable John Antoon II
Counsel of Record